SLIP OPINION

Cite as 2016 Ark. 52

# SUPREME COURT OF ARKANSAS

No. CV-16-18

| | |
|---|---|
| BRIAN HAILE<br>　　　　　　　　　　APPELLANT<br><br>V.<br><br><br>JOSH JOHNSTON, INDIVIDUALLY<br>AND AS A CANDIDATE FOR<br>SHERIFF OF CLEBURNE COUNTY;<br>LARRY CRABTREE, JOE<br>TOURNEAR, AND LEE NOBLE, IN<br>THE REPRESENTATIVE CAPACITIES<br>AS MEMBERS OF THE CLEBURNE<br>COUNTY ELECTION COMMISSION;<br>DOYLE WEBB, IN HIS<br>REPRESENTATIVE CAPACITY AS<br>CHAIRMAN OF THE REPUBLICAN<br>PARTY OF ARKANSAS; JULIE FEIL,<br>IN HER REPRESENTATIVE<br>CAPACITY AS CHAIRMAN OF THE<br>CLEBURNE COUNTY REPUBLICAN<br>COMMITTEE; AND PAUL MUSE IN<br>HIS OFFICIAL CAPACITY AS<br>CLEBURNE COUNTY CLERK<br>　　　　　　　　　　APPELLEES | **Opinion Delivered** February 11, 2016<br><br>APPEAL FROM THE CLEBURNE<br>COUNTY CIRCUIT COURT<br>[NO. 12CV-15-188]<br><br>HONORABLE TIM WEAVER,<br>JUDGE<br><br><br>AFFIRMED. |

**KAREN R. BAKER, Associate Justice**

This appeal involves a challenge to the eligibility of appellee Josh Johnston to hold

public office.[1]  Brian Haile, a registered voter in Cleburne County, challenged Johnston's

---

[1]The appellees are as follows: Josh Johnston, individually and as a candidate for Sheriff of Cleburne County; Larry Crabtree, Joe Tournear, and Lee Noble, in their representative capacities as member of the Cleburne County Election Commission; Doyle Webb in his representative capacity as chairman of the Republican Party of Arkansas; Julie Feil, in her

eligibility to run as a candidate for Cleburne County Sheriff alleging that Johnston was constitutionally ineligible to run for or hold public office.

On March 24, 1995, Johnston was charged with felony offense of violation of the Arkansas hot-check law, Ark. Code Ann. § 5-37-302 (Repl. 2013). The charges were subsequently reduced to a Class A misdemeanor, and on June 12, 1995, Johnston pleaded guilty, was sentenced, paid restitution, fines and courts costs.

On February 28, 2014, Johnston filed to run as a candidate for Cleburne County Sheriff. Haile filed a petition for declaratory judgment and a writ of mandamus requesting that the Cleburne County Circuit Court find the misdemeanor hot-check violation an infamous crime pursuant to article 5, section 9 of the Arkansas Constitution and hold Johnston ineligible to run for or hold public office. On May 8, 2014, the circuit court held that Johnston's conviction was an infamous crime and rendered Johnston ineligible to run for or hold public office. Thereafter, Johnston requested and received a new trial at the circuit court level, which ended with the same result. From that order, on May 19, 2014, Johnston filed a petition for emergency stay of the circuit court's order, expedited consideration, and delay of counting and certification of the vote for the office of Cleburne County Sheriff to run for or hold office with this court. On May 20, 2014, we denied Johnston's request. Accordingly, the circuit court's order remained in effect.

In June 2014, Johnston filed a petition to seal his record pursuant to Act 1460 of 2013,

---

representative capacity as chairman of the Cleburne County Republican Committee; and Paul Muse in his official capacity as Cleburne County Clerk.

Ark. Code Ann. §§ 16-90-1401 et seq. (2013), in Cleburne County Circuit Court. On June 23, 2014, the circuit court entered an order sealing Johnston's misdemeanor conviction. On November 2, 2015, Johnston filed as a candidate for Cleburne County Sheriff. On November 12, 2015, Haile returned to circuit court and filed a petition for declaratory judgment and writ of mandamus alleging Johnston was ineligible to serve and contended that the circuit court's 2014 order controlled. The parties timely responded including Johnston's response to Haile's petition and motion for summary judgment. On November 24, 2015, the circuit court held a hearing. On that same day, the circuit court entered an order dismissing Haile's petition and granting Johnston's motion for summary judgment. Specifically, the circuit court held that pursuant to Ark. Code Ann. §§ 16-90-1401 et seq., Johnston's record was sealed and expunged and he was eligible to run for and hold public office. From that order, Haile timely appeals and presents one issue on appeal: whether the circuit court erred in ruling that Johnston was eligible to run for public office after having been previously determined ineligible as a result of Johnston's being found guilty of committing an infamous crime in violation of article 5, section 9 of the Arkansas Constitution. On January 11, 2016, we granted expedited consideration of this matter.

I. *Standard of Review*

We review the denial of a declaratory judgment action with a clearly erroneous standard. *Poff v. Peedin*, 2010 Ark. 136, 366 S.W.3d 347. Further, we review issues of statutory interpretation de novo. *See Ryan & Co. AR, Inc. v. Weiss*, 371 Ark. 43, 263 S.W.3d 489 (2007). The basic rule of statutory construction is to give effect to the intent of the

3

SLIP OPINION

General Assembly. *Id*. In determining the meaning of a statute, the first rule is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Id*. This court construes the statute so that no word is left void, superfluous, or insignificant, and meaning and effect are given to every word in the statute if possible. *Id*. Finally, this court will accept a circuit court's interpretation of the law unless it is shown that the court's interpretation was in error. *Id*.

## II. *Law & Analysis*

Haile asserts that the circuit court erred in holding that Johnston was eligible to run for and hold office. Haile contends that the circuit court erred because res judicata bars any relitigation of the issue. Further, relying on *State v. Oldner*, 361 Ark. 316, 206 S.W.3d 818 (2005), and *Allen v. State*, 327 Ark. 350, 939 S.W.2d 270 (1997), Haile contends that this court has held that once an individual is deemed ineligible to hold office pursuant to our constitution, that individual is ineligible in perpetuity. Haile further asserts that, based on these cases, it was error for the circuit court to enter the November 24, 2015 order.

Prior to reaching the merits, we must first address Haile's contention that the present case is barred from review based on the doctrine of res judicata. Haile asserts that the circuit court erred because it was barred by res judicata from reaching the same issue the circuit court decided in 2014. However, this argument is misplaced. "Under the doctrine of res judicata or claim preclusion, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim or cause of action." *Middleton v. Lockhart*, 344 Ark. 572, 578,

43 S.W.3d 113, 117–18 (2001) (internal citations omitted). However, the issue presented here, the effect of Johnston's sealed record, was not litigated in the 2014 case. Stated differently, res judicata is not applicable to the case at bar because the issue before us was not a part of the 2014 litigation. Therefore, the doctrine of res judicata does not apply.

Turning to the issue presented, we must review the applicable laws. First, article 5, section 9: "Felony convictions; eligibility of persons convicted," of the Arkansas Constitution provides as follows.

> No person hereafter convicted of embezzlement of public money, bribery, forgery or other infamous crime, shall be eligible to the General Assembly or capable of holding any office of trust or profit in this State.

Second, in 2013, the Arkansas General Assembly passed Act 1460, "An Act to Establish the Comprehensive Criminal Record Sealing Act of 2013" which contains the statutes at issue. *See* Ark. Code Ann. §§ 16-90-1401 et seq. The intent of the Act is found in Ark. Code Ann. § 16-90-1402, "Intent":

> (a) The General Assembly recognizes that historically the laws of this state involving the procedure a person must follow to have his or her prior criminal history information sealed have been confusing, from the standpoint of both practicality and terminology.

> (b) It is the intent of the General Assembly to provide in clear terms in what instances and, if applicable, how a person may attempt to have his or her criminal history information sealed.

> Next, Ark. Code Ann. § 16-90-1404(4)(A) defines "seal" as

> to expunge, remove, sequester, and treat as confidential the record or records in question according to the procedures established by this subchapter.

> Further in the Act, Ark. Code Ann. § 16-90-1417, "Effect of sealing," provides in

SLIP OPINION

pertinent part:

> (a)(1) A person whose record has been sealed under this subchapter shall have all privileges and rights restored, and the record that has been sealed shall not affect any of his or her civil rights or liberties unless otherwise specifically provided by law.
>
> . . . .
>
> (b)(1) Upon the entry of the uniform order, the person's underlying conduct shall be deemed as a matter of law never to have occurred, and the person may state that the underlying conduct did not occur and that a record of the person that was sealed does not exist.
>
> (2) This subchapter does not prevent the use of a prior conviction otherwise sealed under this subchapter for the following purposes:
>
> > (A) Any criminal proceeding for any purpose not otherwise prohibited by law;
> >
> > (B) Determination of offender status under the former § 5-64-413;
> >
> > (C) Habitual offender status, § 5-4-501 et seq.;
> >
> > (D) Impeachment upon cross-examination as dictated by the Arkansas Rules of Evidence; or
> >
> > (E) Any disclosure mandated by Rule 17, 18, or 19 of the Arkansas Rules of Criminal Procedure.

Moving to our review of the statute before us, "[t]he first rule in considering the meaning and effect of a statute is to construe it just as it reads, giving the words their ordinary and usually accepted meaning in common language." *Ortho-McNeil-Janssen Pharm., Inc. v. State*, 2014 Ark. 124, at 10, 432 S.W.3d 563, 571. The basic rule of statutory construction is to give effect to the intent of the legislature. *Dep't of Human Servs. & Child Welfare Agency Review Bd. v. Howard*, 367 Ark. 55, 62, 238 S.W.3d 1, 6 (2006). Additionally, in construing any statute, we place it beside other statutes relevant to the subject matter in question and

SLIP OPINION

ascribe meaning and effect to be derived from the whole. *Lawhon Farm Servs. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998). Statutes relating to the same subject must be construed together and in harmony, if possible. *Berryhill v. Synatzske*, 2014 Ark. 169, at 4–5, 432 S.W.3d 637, at 640.

Here, in reviewing Ark. Code Ann. § 16-90-1417, "Effect of sealing," the plain and ordinary meaning in the statute is that a person whose record has been sealed shall have all privileges and rights restored and not affect any of his or her civil rights or liberties unless otherwise specifically provided by law. The plain language also provides that upon the entry of the uniform order, the person's underlying conduct shall be deemed as a matter of law never to have occurred, and the person may state that the underlying conduct did not occur and that a record of the person that was sealed does not exist. Additionally, the plain language of Ark. Code Ann. § 16-90-1417(b)(2)(A)–(E) also provides five exceptions to the sealing of a prior conviction and allows the use of the prior conviction in the enumerated situations. In other words, subsection (b)(2)(A)–(E) does not prevent the use of a prior conviction – that would otherwise be sealed – in the specifically identified situations of subsection (b)(2). However, none of these exceptions are applicable to this matter. In sum, here, based on the plain language of the statute at issue, as a matter of law, Johnston's misdemeanor conviction never occurred, Johnston never had a record, and all of his privileges and rights are restored. Accordingly, the plain language dictates that it is as if Johnston never had the misdemeanor conviction. Thus, Johnson is eligible to run for and hold office.

Further, our case law supports our interpretation of the statute. In *Powers v. Bryant*,

309 Ark. 568, 571–72, 832 S.W.2d 232, 233–34 (1992), we addressed a similar situation. The pertinent facts from *Powers* are as follows. On August 17, 1932, Altus "Shorty" Doshier, mayor of Yellville, Arkansas, "pled guilty to the offenses of burglary and grand larceny. Doshier was seventeen at the time and served seventy-six days confinement in the Arkansas Boys' Industrial School. More than fifty years later, on May 1, 1984, Doshier filed a petition for writ of error in the circuit court of Marion County. The basis of Doshier's petition was his assertion that he . . . [had not been] informed of the right to counsel at the time he entered his guilty plea in 1932. On July 29, 1985, the Honorable John Lineberger granted Doshier a writ of error coram nobis setting aside Doshier's 1932 convictions and declaring the 1932 convictions 'null and void.' Judge Lineberger further ordered the reinvestment of all Doshier's rights of which he was deprived or could have been deprived because of the 1932 felony conviction. Finally, Judge Lineberger ordered the sealing of the record containing the coram nobis proceedings." *Id.*, at 569–70, 832 S.W.2d 232–33. On November 8, 1990, Kerm Powers filed a petition for writ of mandamus in the Pulaski County Circuit Court directing then Attorney General Winston Bryant to prosecute an action to remove Doshier from Doshier's office as mayor of Yellville, Arkansas. Powers argued that Arkansas Constitution article 5, section 9 prohibited Doshier from holding office because Doshier was convicted in 1932 of the crimes of burglary and grand larceny. The circuit court denied Powers's petition. We affirmed and explained as follows.

> The question then becomes whether Ark. Const. art. 5, § 9 prohibits a citizen with a "null and void" expunged felony conviction from holding public office in this state.
>
> Appellant argues that the mere "fact" of a prior conviction, regardless of

> whether the conviction has been expunged or voided, renders a citizen constitutionally ineligible to hold public office under art. 5, § 9. Appellant cites no authority to support his rigid constitutional interpretation, and we reject this argument based on the reasoning recently set out in *Tyler v. Shackleford*, 303 Ark. 662, 799 S.W.2d 789 (1990). In the *Tyler* case, we discussed the legal effect of expunction under the Federal Youth Corrections Act, and relied on decisions of the Fifth and Sixth Circuits holding that expungement under the federal act actually removed the fact of a conviction. We adopted the reasoning of the Fifth Circuit in holding that following a discharge under the federal act, "the disabilities of a criminal conviction are completely and automatically removed; indeed, the conviction is set aside as if it had never been." *Id.* at 665, 799 S.W.2d at 790, *quoting United States v. Arrington*, 618 F.2d 1119 (5th Cir.1980).

*Id.*, 832 S.W.2d at 233–34; *see also Tyler v. Shackleford*, 303 Ark. 662, 663, 799 S.W.2d 789, 789 (1990).

Although Haile asserts that *Powers* is distinguishable from Johnston's case because, in *Powers*, Doshier had not been deemed ineligible to hold office before he was elected, we disagree. In *Powers*, while citing to *Tyler*, we held that the expunged conviction was "as if it had never been." *Id.*, 309 Ark. at 572, 832 S.W.2d at 234. Further, Haile contends that *Oldner*, *supra*, and *Allen*, *supra*, require that we hold that Johnston's conviction renders Johnston ineligible to run for or hold office in perpetuity. However, a careful reading of *Oldner*, which cites to *Allen*, does not support Haile's argument. In *Oldner*, the issue presented was what constitutes an category of "infamous crime" for purposes of removing an elected official from public office. *Oldner*, 361 Ark. at 323, 206 S.W.3d at 819. Thus, this court was called upon to determine which crimes fell within the "infamous crimes" pursuant to our constitution. In that case, Oldner's convictions were not expunged or sealed as presented in this case. In reversing the circuit court, and rendering Oldner ineligible to hold office, we explained:

> Oldner's convictions of infamous crimes disqualify him from holding public office. This is not a disqualification that can be overcome by the will of the electorate. Simply put, he remains ineligible for holding public office in perpetuity. *See Allen v. State*, 327 Ark. 350, 327 Ark. 366A, 939 S.W.2d 270 (1997).

*Id.* at 333, 206 S.W.3d at 826. This holding was based on the specific circumstances in Oldner's case and the unsealed convictions against him. *Id.* at 333, 206 S.W.3d at 826. That is not the case here because Johnston's conviction has been sealed and it is as if it had never existed.

Accordingly, based on our standard of review and our discussion above, we cannot say that the circuit court clearly erred in denying Haile declaratory relief. Therefore, we affirm the circuit court.

Affirmed.

BRILL, C.J., and DANIELSON, J., concur.

Special Justice ROBERT J. LAMBERT, JR. concurs with opinion to follow.

WOOD, J., not participating.

**HOWARD W. BRILL, Chief Justice, concurring.** I concur in the result, but I write separately to explain why res judicata does not apply in this case.

As we have noted, the doctrine of res judicata consists of two facets, claim preclusion and issue preclusion. *Carwell Elevator Co. v. Leathers*, 352 Ark. 383, 101 S.W.3d 211 (2003). Under the claim-preclusion aspect of res judicata, a valid and final judgment rendered on the merits by a court of competent jurisdiction bars another action by the plaintiff or his privies against the defendant or his privies on the same claim. *Huffman v. Alderson*, 335 Ark. 411, 983 S.W.2d 899 (1998). Issue preclusion, or collateral estoppel, bars relitigation of issues that were

actually litigated by the parties in a previous suit. *Ark. Judicial Discipline Comm. v. Proctor*, 2010 Ark. 38, 360 S.W.3d 61.

Here, claim preclusion is inapplicable. The claim raised in the first lawsuit was the eligibility of Johnston to be a candidate for sheriff in the 2014 general election. In contrast, the claim in this dispute is his eligibility to be a candidate in the 2016 general election. The claims are different. The 2016 claim could not have been raised in the first lawsuit.

Likewise, issue preclusion is inapplicable. The issue in the 2014 suit was whether the 1995 misdemeanor conviction disqualified Johnston from running for or holding public office. In contrast, the issue here is whether the conviction, when sealed under Arkansas statutory law, disqualifies Johnston from running for or holding public office.

Neither claim preclusion nor issue preclusion is applicable. Therefore, res judicata does not bar this case.

DANIELSON, J., joins.

*Grayson & Grayson, P.A.*, by: *Keith L. Grayson* and *Melanie L. Grayson*, for appellant.

*Greenberg Legal Services*, by: *Daniel Greenberg*, for appellee Josh Johnston.